## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHADY HANAFY | : | |
| 1306 North Carlisle St. 1st Fl. | : | |
| Philadelphia, PA 19121 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No. _____ |
| | : | |
| v. | : | |
| | : | |
| HILL INTERNATIONAL, INC. | : | **JURY TRIAL DEMANDED** |
| 2005 Market St. | : | |
| Commerce Square, 17th Fl. | : | |
| Philadelphia, PA 19103 | : | |
| | : | |
| Defendant. | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.     This action has been initiated by Shady Hanafy (hereinafter referred to as "Plaintiff," unless indicated otherwise) against Hill International, Inc. (hereinafter referred to as "Defendant") for violations of the Americans with Disabilities Act ("ADA" -42 USC §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et seq.*), the Age Discrimination in Employment Act ("ADEA" - 29 U.S.C. §§ 621 *et. seq.*), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981), Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000e, *et. seq.*), and the Pennsylvania Human Relations Act

("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5.      Plaintiff is proceeding herein under Title VII, the ADEA, and the ADA and has properly exhausted his administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

---

[1] Plaintiff will move to amend his instant lawsuit to include a claim under the PHRA once his administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission. Any claims under the PHRA though would mirror the instant Title VII, ADEA, and ADA claims identically.

**PARTIES**

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual, with an address as set forth in the caption.

8.      Defendant is a corporation located at the above-captioned address that engages in the business of developing and machining high-performance plastic materials.

9.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

**FACTUAL BACKGROUND**

10.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.      Plaintiff was employed with Defendant for over 10 years (from on or about April 21, 2011 through on or about October 1, 2021).

12.      At the time of Plaintiff's involuntary separation from Defendant, he was employed as a Human Resources Generalist ("HR Generalist").

13.      Plaintiff is 47 years old.

14.      Plaintiff is from Egypt (moved to the United States in 1997) and his race is Middle-Eastern.

15.      When Plaintiff first started working for Defendant, he was working internationally in Saudi Arabia reporting to Middle East Headquarters in Dubai (under the supervision of Mrs.

Naomi Williams – International HR VP, during the last few years of his employment in Saudi Arabia).

16.     During his 8 years of service in Defendant's International Branch, Plaintiff was promoted twice and in 2016 and was selected as one of very few employees with Defendant worldwide (approximately 3300 employees) to have his contract amended to include an airline ticket. This was an honor given to Plaintiff based on his exceptional performance with Defendant.

17.     Approximately three (3) years before his unlawful termination in October of 2021 (discussed further *infra*), Plaintiff transferred to the United States upon his request and approval of the Senior Vice President of HR, Keith Person (hereinafter "Person").

18.     Upon information and belief, Person thought Plaintiff would make a great asset to the U.S. team. because of his strong work ethic and performance over the years he had been employed with Defendant.

19.      Plaintiff was informed by Person that his plan was to move Plaintiff to the U.S. team in order to motivate his staff and expose them to his work ethics. Person also informed Plaintiff that he wanted Plaintiff to play an important role in linking U.S. Headquarters and International Headquarters with his experience and knowledge.

20.     Based on Person's aforesaid representations, Plaintiff accepted a pay reduction and a change of title to "HR Generalist" with the understanding that once Plaintiff completed his training in the U.S., he would receive a different title and a higher pay rate.

21.     Shortly after being transferred to the U.S., Person separated from his employment and Tiffany Banks (Black/American – hereinafter "Banks") assumed his position.

22.     For the first approximate year of Plaintiff's employment in the U.S., he directly reported to Christen Klemp (Caucasian/American – hereinafter "CK").

23.     In addition to Banks, Klemp and Plaintiff, Defendant's U.S. HR department also employed the following individuals during Plaintiff's approximate first year of employment in the U.S.: HR Director, Felicia Cream (Black/American – hereinafter "Cream"); HR Onboarding Manager (name unknown); Benefits Manager, Lisa (last name unknown – hereinafter "Lisa"); and HR Coordinator, Gabe Klemp (Caucasian/American – hereinafter "Klemp" – who was also CK's husband and therefore reported to Cream because he was unable to report to CK).

24.     In or about October of 2019, Defendant hired another young female HR Generalist, Lindsay Brown (approximate 30s, Caucasian/American – hereinafter "Brown"). She was placed under Klemp and Plaintiff was then placed under a new supervisor, Cream.

25.     After coming under the supervision of Klemp and Banks and while also under the supervision of Cream (and Banks), Plaintiff was subjected to constant discriminatory treatment based on his race, national origin, and advanced age.

26.     For example, unlike Plaintiff's counterparts who fell outside of his protected classes:

    i.   Plaintiff was constantly asked if he wanted to resign, which after so many times seemed to be more of an invitation to resign rather than a question;

    ii.   Plaintiff was given a job description for an administrative level position, which consisted of a tremendous amount of tedious tasks with unrealistic and selectively enforced deadlines and which did not reflect Plaintiff's skills, qualifications and experience in HR;

    iii.   With each new and time-consuming/tedious task that was added to Plaintiff's job (discussed *supra*), it became strongly apparent to Plaintiff that Defendant's management was attempting to make Plaintiff's work

environment so miserable that he would quit. However, Plaintiff refused to quit and continued to work to the best of his ability to complete all his tasks in a timely manner, even having to work days, nights and during his time off (although Plaintiff did not record this time on his timesheets per Defendant's management's instructions);

iv.  GK was assigned to train Plaintiff under the aforesaid administrative level job description (as it was his prior job description), while GK was given the job of HR Generalist for the U.S. Team, performing more meaningful HR-specific tasks (even though Plaintiff had more experience, seniority, qualifications and skills than GK);

v.  Changes were made within the U.S. HR department to make Plaintiff's job more difficult. For example, when Plaintiff assumed the duty of "job descriptions," the timeline to enter education verifications into the system was 48 hours; however, when GK was previously assigned this task, it was 90 days. When Plaintiff complained that this change in procedure was not only challenging but unfair, he was told "it is what it is, accept it or resign."

vi.  There were many issues within the U.S. HR department that Plaintiff was blamed for without reason (including some issues that occurred when Plaintiff was not even employed within the U.S. HR department);

vii.  Plaintiff was often ignored, not invited to meetings and events, and treated like an outcast. For example, when Plaintiff was invited to the company New Year's party, he was not seated at the HR table;

viii.  Plaintiff was consistently denied opportunities to engage in and/or take on more meaningful tasks. For example:

(1)  When GK, who was responsible for the U.S. Team and had more meaningful tasks (*i.e.* more akin to that of a true HR Generalist), transferred to the IT department, Plaintiff was denied the opportunity to replace GK and instead Defendant hired Brown to fill GK's position;

(2)  When Defendant's U.S. Onboarding HR Manager resigned, Plaintiff offered to assume some of her responsibilities (as again, they were more advanced and meaningful and would have allowed Plaintiff to apply his skills and qualifications rather than perform mundane and tedious tasks); however, Plaintiff was again denied this opportunity; and

(3)  When Defendant's U.S. Benefits Manager resigned and her successor was overwhelmed with tasks, Plaintiff offered to help (as again, he had the experience, skills, and qualifications to assist) but instead, those tasks were assigned to Lindsay.

ix.  Plaintiff was treated in a rude and demeaning manner by Defendant's management;

x.  Plaintiff had policies selectively enforced against him;

xi.  Plaintiff was assigned more work than other employees within his department;

xii.  Plaintiff was issued pretextual discipline and negative performance evaluations (in an apparent attempt to try and terminate his employment for discriminatory and pretextual reasons).; and

xiii.  Plaintiff was subjected to discriminatory comments based on his race, national origin, and/or ethnic characteristics.

27.    Some of the aforesaid discriminatory comments that Plaintiff was subjected to by Defendant's management and staff included but was not limited to being told that it was hard to understand Plaintiff because of his accent or that they could not hear Plaintiff because of his accent (even though others outside of Plaintiff's workplace could clearly understand what he was saying despite his accent), and being told "in this country" things are done different or in a certain way.

28.    In addition to the foregoing, Plaintiff was also treated in a discriminatory manner based on his actual/perceived/record of disabilities.

29.    Specifically, Plaintiff suffers from disabilities related to his heart, which at times interferes with his ability to perform certain daily life activities, including but not limited to lifting, performing manual tasks, and working.

30.    In or about 2019, Plaintiff suffered a heart attack (which he attributed to the amount of stress he was put under at work) and was required to take a medical leave of absence.

31.    When Plaintiff returned from his aforesaid medical leave of absence, he was treated in a very hostile manner, including but not limited to:

i.  Trying to issue him discipline for not calling out of work when he had been admitted to the hospital for an emergency;

ii.  Being required to lift lifting heavy packages, even though Plaintiff apprised Defendant's management and told Cream on several occasions that he

8

should not be lifting heavy objects (as his doctor advised him not to perform strenuous activities);

iii. During the pandemic (before July of 2021 when all employees were required to return 50% of the time), Plaintiff was often volunteered to go into the office several days a week, unlike his other co-workers. Plaintiff was not in a position to object to Defendant's management requests because of their prior discriminatory/retaliatory treatment of him. After being requested to go to the office several times a week (unlike his other co-workers), Plaintiff became worried that he was there alone and that if something happened to him (related to his health), no one would be there to call 911. Plaintiff expressed these concerns to Cream, and while Plaintiff was required to go to the office less often after his conversation with Cream, he was still made to do so more than other employees.

32.    Despite the continuous hostile work environment that Plaintiff was subjected to upon his return from medical leave, he continued to do as he was instructed (despite the discriminatory nature of Defendant's actions) because he needed a job, as he had a family to support in Egypt.

33.    However, Plaintiff did express concerns about the aforesaid discriminatory treatment that he was being subjected to on several occasions in advance of his October 2021 termination. Unfortunately, Plaintiff's complaints fell on deaf ears and no one in Defendant's management properly investigated or resolved his concerns of discrimination and the aforesaid harassment continued.

34.    In the months leading up to his separation, Plaintiff informed Defendant's management that he would be taking another medical leave in the near future to undergo bypass surgery (related to his aforesaid heart condition).

35.    During these aforesaid conversations (referenced in Paragraph 34 of the instant Civil Action Complaint), Plaintiff specifically informed Defendant's management that he would be undergoing bypass surgery once his wife was permitted to come to the U.S. under an immigration Visa.

36.    Defendant's management was aware that Plaintiff's wife was coming to the U.S. the weekend of September 11, 2021 (and that as a result, he would be undergoing bypass surgery shortly thereafter).

37.    On or about September 14, 2021, Plaintiff was informed by Defendant that he was being terminated from his employment due to a restructuring and that his termination date would be effective October 1, 2021.

38.    Plaintiff was offered a severance agreement, which would require him to waive any and all claims that he had against Defendant (including claims under the ADA, FMLA, Title VII, and ADEA) in exchange for a small sum of money. Plaintiff rejected this proposed offer.[2]

---

[2] *See Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085, at *13-14 (W.D. Wash. June 2, 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by FRE 408); *Bartlett v. NIBCO Inc*., 2011 U.S. Dist. LEXIS 28072, at *11 (N.D. Ind. March 18, 2011) ("Severance pay packages contingent upon a release of claims which are offered *contemporaneously with the notice of termination* are *not* covered by [Rule 408]," and the motive in offering same is admissible evidence in a retaliation claim and is admissible at trial in this case.) (citation omitted).

39.    A few weeks before informing Plaintiff that he was being separated from his employment, Defendant hired a young Black/American male in his 30s into the role of HR Manager (who started on September 13, 2021).

40.    Upon information and belief, when Plaintiff was terminated, Defendant re-titled Brown's HR Generalist position into that of "HR Manager" as well.

41.    Plaintiff holds the following HR credentials and U.S. Army Recognitions: SHRM Professional Member 01812864 - License 01812864; CIPD Assoc CIPD - License 47372062; and AHRI MAHRI - License 327790 and he received the following awards while he was in the U.S. Army: 2002: NDSM (National Defence Service Medal); February 2004: AAM (Army Achievement Medal); November 2002: ASR (Army Service Ribbon); 2003: GWOTM (Global War in Terrorism Medal); 2003: AESM (Army Expeditionary Service Medal); and 2004: OSR (Overseas Service Ribbon).

42.    Therefore, even with 25 years of experience in the HR field, almost 11 years seniority with Defendant, a history of dedicated and loyal service with Defendant, numerous awards from the U.S. Army and more than enough HR qualifications and skills, Plaintiff was eliminated instead of the other two younger, non-disabled, and non-Middle Eastern individuals who now hold the title of "HR Manager."

43.    Defendant claims that Plaintiff's job was eliminated because of "cost-saving" reasons; however, it is clear that the HR Generalist positions that Plaintiff and Brown held before October 1, 2021 were simply given a title change (to HR Manager) and Plaintiff was replaced in his role by a young black, American male (who started employment just one day before Plaintiff was informed he was being terminated).

44.      Plaintiff believes and therefore avers that he was subjected to a hostile work environment, not retained by Defendant and thus ultimately terminated from his employment with Defendant in violation of the ADA, FMLA, ADEA, Title VII and Section 1981.

**COUNT I**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Hostile Work Environment;**
**[3] Retaliation; [4] Failure to Accommodate)**

45.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46.      Plaintiff suffered from qualifying health conditions under the ADA (as amended), which (at times) affected his ability to perform some daily life activities (as discussed *supra*).

47.      Plaintiff requested reasonable accommodations, including but not limited to intermittent and block medical leave.

48.      In response to learning of Plaintiff's disabilities and requests/need for reasonable medical accommodations, Plaintiff was subjected to a hostile work environment through disparate treatment, pretextual admonishment, and discriminatory/retaliatory harassment (including failing to accommodate his disabilities by making him perform tasks outside of his physical limitations).

49.      Plaintiff expressed concerns regarding Defendant's management's failure to accommodate his health conditions and their discriminatory treatment of him in advance of his ultimate termination, but no remedial action was taken.

50.      In the months leading up to his separation, Plaintiff informed Defendant's management that he would be taking another medical leave in the near future to undergo bypass surgery (related to his disabilities).

51.     During these aforesaid conversations, Plaintiff specifically informed Defendant's management that he would be undergoing bypass surgery once his wife was permitted to come to the U.S. under an immigration Visa.

52.     Defendant's management was aware that Plaintiff's wife was coming to the U.S. the weekend of September 11, 2021 (and that as a result, he would be undergoing bypass surgery shortly thereafter).

53.     On or about September 14, 2021 (just one day after a younger African American HR Manager with less skills and qualifications than Plaintiff began his employment with Defendant), Plaintiff was informed by Defendant that he was being terminated from his employment due a restructuring and that his termination date would be effective October 1, 2021.

54.     Defendant claims that Plaintiff's job was eliminated because of "cost-saving" reasons; however, it is clear that the HR Generalist positions that Plaintiff and Brown held before October 1, 2021 were simply given a title change (to HR Manager) and Plaintiff was replaced in his role by a young black, American male (who started employment just one day before Plaintiff was informed he was being terminated).

55.     Plaintiff believes and therefore avers that his known disabilities, perceived disabilities; and/or his record of impairment were motivating or determinative factor[s] in Defendant's decisions to (a) terminate his employment; (b) not retain Plaintiff as an "HR Manager;" and/or (c) not accommodate Plaintiff's medical leave (by terminating him shortly before Plaintiff would have taken a medical leave of absence under the ADA to undergo bypass surgery).

56.    Plaintiff also believes and therefore avers that he was terminated from his employment with Defendant and/or not retained by Defendant as an "HR Manager" because of his protected activity under the ADA (which constitutes unlawful retaliation).

57.    These actions as aforesaid constitute violations of the ADA, as amended.

## COUNT II
## Family and Medical Leave Act ("FMLA")
### (Interference and Retaliation)

58.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

59.    Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

60.    Plaintiff requested leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

61.    Plaintiff had at least 1,250 hours of service with the Defendant during his last full year of employment (pre-FMLA leave request).

62.    Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

63.    Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of FMLA on a block or intermittent basis.

64.    Defendant committed interference and retaliation violations of the FMLA by *inter alia*: (1) considering Plaintiff's FMLA leave/needs in making the decision to terminate him; (2) terminating Plaintiff's employment in retaliation for requesting and/or utilizing FMLA leave; (3) terminating Plaintiff's employment in order to prevent him from using FMLA leave in the future;

and/or (4) taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA.

65.     Plaintiff believes and therefore avers that his requests and/or utilization of FMLA were motivating or determinative factor[s] in Defendant's decisions to (a) terminate his employment; and/or (b) not retain Plaintiff as an "HR Manager."

66.     These actions as aforesaid constitute both interference and retaliation violations of the FMLA.

### COUNT III
### Violations of the Age Discrimination in Employment Act ("ADEA")
### (Age Discrimination)

67.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

68.     Plaintiff believes and avers that he was subjected to a hostile work environment and ultimately terminated and/or not retained as an HR Manager because of his advanced age.

69.     Defendant claims that Plaintiff's job was eliminated because of "cost-saving" reasons; however, it is clear that the HR Generalist positions that Plaintiff and Brown held before October 1, 2021 were simply given a title change (to HR Manager) and Plaintiff was replaced in his role by a young male (who started employment just one day before Plaintiff was informed he was being terminated).

70.     These actions as aforesaid constitute unlawful retaliation under the ADEA.

### Count IV
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### ([1] Race/National Origin Discrimination; [2] Hostile Work Environment; [3] Retaliation)

71.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

72.    Plaintiff was subjected to a hostile work environment through disparate treatment, pretextual admonishment, discriminatory comments and/or demeaning treatment during his employment with Defendant in the United States because of his race/national origin and/or his complaints about race/national origin discrimination.

73.    While Plaintiff expressed concerns of racial/national origin discrimination to Defendant's management on several occasions in advance of his termination, no proper investigation was done and no remedial action was taken.

74.    Instead, on or about September 14, 2021 (just one day after a younger African American HR Manager with less skills and qualifications than Plaintiff began his employment with Defendant), Plaintiff was informed by Defendant that he was being terminated from his employment due to a restructuring and that his termination date would be effective October 1, 2021.

75.    Defendant claims that Plaintiff's job was eliminated because of "cost-saving" reasons; however, it is clear that the HR Generalist positions that Plaintiff and Brown held before October 1, 2021 were simply given a title change (to HR Manager) and Plaintiff was replaced in his role by a young black, American male (who started employment just one day before Plaintiff was informed he was being terminated).

76.    Plaintiff believes and therefore avers that his race and/or national origin was a motivating or determinative factor in Defendant's decisions to (a) terminate his employment; and/or (b) not retain Plaintiff as an "HR Manager."

77.    Plaintiff also believes and therefore avers that he terminated and/or not retained as an HR Manager in retaliation for engaging in protected activity under Title VII.

78.    These adverse actions taken against Plaintiff on account of his race/national origin and/or complaints of discrimination constitute violations of Title VII.

### Count IV
### Violations of 42 U.S.C. § 1981
([1] Race Discrimination[3]; [2] Retaliation)

79.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

80.    Plaintiff was subjected to a hostile work environment through disparate treatment, pretextual admonishment, discriminatory comments and/or demeaning treatment during his employment with Defendant in the United States because of his race and/or his complaints about race discrimination.

---

[3] *See e.g. Smith v. Specialty Pool Contractors*, 2008 WL 4410163, at *4 (W.D. Pa. 2008)(In accordance with Supreme Court jurisprudence, "persons of Jewish ancestry are a distinct race and, therefore, within the protection of 42 U.S.C. § 1981," citing, *St. Francis College v. Al-Khazraji*, 481 U.S. 604, 611-13 (1987))." It is also **well established** that Section 1981 prohibits racial discrimination based upon one's race/ancestry because of his or her <u>linguistic characteristics</u>. In *Chandoke v. Anheuser-Busch, Inc*., 843 F. Supp. 16, 18-20 (D.N.J. 1994), the court explained that Indian ancestry is protected under Section 1981 and that accents relate to not only national origin discrimination ***but also racial discrimination***. *See also Gupta v. Sears, Roebuck & Co*., 2007 WL 2253609, at *3 (W.D. Pa. 2007)(denying motion to dismiss because the plaintiff adequately pleaded Indian ancestry, which is a race, and a discernable accent as to claims under Section 1981); *Saleh v. Upadhyay*, 11 Fed.Appx. 241 (4th Cir. 2001)(Affirming a trial verdict in favor of a plaintiff asserting for, among other claims, a claim under 42 U.S.C § 1981 for discrimination because of his accent; *Lopez v. Indiana-Kentucky Elec. Corp*., 2006 WL 3247892 (S.D. Ind. 2006)(denying summary judgment on plaintiff's Section 1981 claim due to hostility towards his Spanish accent; *Minetos v. City University of New York*, 875 F.Supp. 1046 (S.D. N.Y. 1995)(Hispanic secretary with college's music department stated a Section 1981 cause of action by alleging that she was not allowed to be head secretary because she had a Hispanic accent); *Ortiz v. Bank of America*, 547 F.Supp. 550 (D.Cal. 1982)(Puerto Rican asserting employment discrimination because of accent states cause of action under Section 1981); *Nedeltchev v. Sheraton St. Louis City Center Hotel & Suites*, 335 Fed.Appx. 656 (8th Cir. 2009)(finding European Slavic plaintiff states a cause of action under Section 1981 for harassment because of his ancestry and accent); *Saleh v. Upadhyay*, 11 Fed.Appx. 241 (4th Cir. 2001)(affirming verdict for Nigerian born professor under Section 1981 for among other things, discrimination against his accent); *Mavrommatis v. Carey Limousine Westchester, Inc*., WL 2976925 (D.Conn. 2010)(holding 1981 claim satisfied by discrimination because of accent but dismissing case on other grounds); *Rumala v. New York City Transit Auth* ., 2005 WL 2076596, *8-*9 (E.D.N.Y. 2005)(construing complaint as one of ancestry, as well as national origin, when plaintiff's claims included alleged discriminated based on an alleged accent); *Franchitti v. Bloomberg, L.P*., 2004 WL 2366183, *2-*4 (S.D.N.Y. 2004) (inferring that § 1981 claim was based on ancestry when plaintiff's accent was one of the alleged bases for discrimination).

81.    While Plaintiff expressed concerns of racial discrimination to Defendant's management on several occasions in advance of his termination, no proper investigation was done and no remedial action was taken.

82.    Instead, on or about September 14, 2021 (just one day after a younger African American HR Manager with less skills and qualifications than Plaintiff began his employment with Defendant), Plaintiff was informed by Defendant that he was being terminated from his employment due to a restructuring and that his termination date would be effective October 1, 2021.

83.    Defendant claims that Plaintiff's job was eliminated because of "cost-saving" reasons; however, it is clear that the HR Generalist positions that Plaintiff and Brown held before October 1, 2021 were simply given a title change (to HR Manager) and Plaintiff was replaced in his role by a young black, American male (who started employment just one day before Plaintiff was informed he was being terminated).

84.    Plaintiff believes and therefore avers that his race was a motivating or determinative factor in Defendant's decisions to (a) deny him advancement opportunities; (b) issue him negative performance evaluations; (c) terminate his employment; and/or (d) not retain Plaintiff as an "HR Manager."

85.    Plaintiff also believes and avers that he was terminated and/or not retained in retaliation for engaging in protected activity under Section 1981.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.    Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's

illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

        B.      Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

        C.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

        D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

                              Respectfully submitted,

                              **KARPF, KARPF & CERUTTI, P.C.**

      By:    _____
                              Ari R. Karpf, Esq.
                              3331 Street Road
                              Two Greenwood Square, Suite 128
                              Bensalem, PA 19020
                              (215) 639-0801

Dated: March 8, 2022

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| Shady Hanafy | : | CIVIL ACTION |
| v. | : |  |
| Hill International, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X )

| 3/8/2022 | _[signature]_ | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___1306 North Carlisle Street, First Floor, Philadelphia, PA 19121___

Address of Defendant: ___2005 Market Street, Commerce Square, 17th Floor, Philadelphia, PA 19103___

Place of Accident, Incident or Transaction: ___Defendant's place of business___

---

*RELATED CASE, IF ANY:*

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: ___3/8/2022___    _____    ___ARK2484 / 91538___
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    *Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☒ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.    *Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___Ari R. Karpf___, counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c ) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: ___3/8/2022___    _____    ___ARK2484 / 91538___
*Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

HANAFY, SHADY

**(b)** County of Residence of First Listed Plaintiff _____Philadelphia_____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS

HILL INTERNATIONAL, INC.

County of Residence of First Listed Defendant _____Philadelphia_____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

|   |   |   |   |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | New Drug Application | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine | Injury Product | | ☐ 840 Trademark | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | Medical Malpractice | | Leave Act | | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | State Statutes |
| ☐ 290 All Other Real Property | ☒ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

|   |   |   |   |   |   |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601); ADEA (29USC621); Section 1981 (42USC1981); Title VII (42USC2000

Brief description of cause:
Violations of the ADA, FMLA, ADEA, Section 1981, Title VII and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
3/8/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

| Print | Save As... | Reset |