**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHADY HANAFY, | CIVIL ACTION |
| Plaintiff, | |
| v. | |
| HILL INTERNATIONAL, INC., | NO.  22-878 |
| Defendant. | |

## MEMORANDUM OPINION

Defendant Hill International, Inc. ("Hill International") moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 as to all counts in Plaintiff Shady Hanafy's Amended Complaint, brought pursuant to the Americans with Disabilities Act ("ADA"), Family and Medical Leave Act ("FMLA"), Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and the Pennsylvania Human Relations Act ("PHRA").  Plaintiff's employment discrimination claims are predicated on his termination by Defendant in October 2021 and allegedly discriminatory conduct by other employees on the basis of his heart condition, race, and national origin. Defendant argues that Plaintiff's job was eliminated during departmental restructuring and that Plaintiff was not considered for another position during the restructuring due to a history of poor performance reviews.

For the reasons below, Defendant's motion for summary judgment will be granted in part and denied in part.

### I.    FACTUAL BACKGROUND

Plaintiff Shady Hanafy was born in February 1974 in Cairo, Egypt, making him 47 years old at the time of his termination by Defendant Hill International in October 2021.

1

Plaintiff was hired by Defendant in 2011 for a human resources position in Saudi Arabia. In 2018, he came to work for Defendant in a new position in the United States.  His initial transfer to the U.S. was objected to by human resource employees Tiffany Banks and Christina Klemp on the grounds they did not believe he was well suited for the position, stating in part that he was too qualified based on the level of his position in Saudi Arabia.  Felicia Cream, a director in the human resources department who interviewed Plaintiff for the U.S. position, also had concerns with hiring Plaintiff in light of performance reviews based on his work in Saudi Arabia, which, in her recollection, "indicated there were deficiencies in his performance."

Upon his arrival in the U.S., Plaintiff began as an "HR Generalist" and reported directly to Christina Klemp, who was a director in the department.  Plaintiff's responsibilities included performing verifications of hired employees' personal information and entering verification information into the Customer Relationship Management ("CRM") system.  Plaintiff was also responsible for other various tasks, such as receiving and distributing mail packages.  During his employment, Plaintiff received multiple warnings about poor performance in his job duties, as discussed in further detail *infra*.

Plaintiff suffered a heart attack in December 2018 and was advised to have triple bypass heart surgery.  As a result, Plaintiff was granted leave from December 18, 2018 through February 18, 2019 and was preliminarily scheduled for surgery on or around February 11, but he ultimately opted against having the surgery at that time because, as he explained in his deposition, he was concerned that the operation could result in long-term disability.  Specifically, he wrote to Banks after deciding not to undertake the surgery that "it would not do much improvement since I have multiple blocking in many places" and "I am not neither my family ready for long term disability or risking losing my job at this time."

Following Plaintiff's heart attack, his physician sent a letter to Defendant stating that Plaintiff was able to resume his work duties with no restrictions effective February 18, 2019.[1] While Plaintiff continued to suffer from coronary heart disease due to three blocked arteries, he also stated in his deposition that his heart condition did "not affect [his] daily life" and he was "still capable of doing my job and my performance."  At the same time, Plaintiff stated at deposition that he had to ask for "a little consideration" from Defendant in respect to some aspects of his job, such as lifting FedEx boxes.

Plaintiff did not reschedule the surgery at any point before his termination in October 2021.  Nor did Plaintiff provide Defendant with any anticipated date for the surgery or request additional leave before his termination.  As Plaintiff explained in his deposition, he was waiting for his wife to come to the United States from overseas such that he could "spend like at least a couple of weeks with [his family]" before doing the surgery.  While Plaintiff's wife planned to arrive in the U.S. around September 2021, Plaintiff still did not schedule the surgery before his termination in October.

Both Felicia Cream and Tiffany Banks were aware of Plaintiff's heart attack and that he was advised to have surgery.  Additionally, Banks was aware that Plaintiff stated he might schedule the surgery sometime after his wife's arrival in the U.S.

### A.  Restructuring

In 2021, Banks was promoted to Senior Vice President of the human resources department and began to consider how to restructure the department, including potentially

---

[1] At his deposition, Plaintiff, however, insisted there were some restrictions otherwise communicated to him. Plaintiff testified: "All I remember is . . . someone in the office called Dr. Mark and he explained the situation for them and he was very specific about not to carry more than one gallon of milk and avoid stressful situations and things like that."

eliminating one of the HR Generalist positions.  Banks began to have discussions in March or April 2021 about eliminating the positions of HR Generalist (which was held by Plaintiff) and Director of Human Resources (then held by Christina Klemp).

In June 2021, Banks emailed her supervisor, Chief Administrative Officer William Dengler, a proposal for the restructuring plan.  The proposal shows the termination of Plaintiff and Christina Klemp, the creation of two "HR Manager" positions, and the promotion of Lindsey Brown, an HR Generalist like Plaintiff.  The projected savings from the restructuring plan was $10,785.  This plan was approved on September 14, 2021 by Dengler with the refinement that Lindsey Brown would be promoted from HR Generalist to HR Manager and her role would be "back filled."

Plaintiff was terminated with an effective date of October 1, 2021.  Christina Klemp was also terminated.  At the time of her termination, she was on medical leave.

Roughly three of four months after Plaintiff's termination, Defendant hired an "HR Coordinator," Gabriel McCann, who is a white/Caucasian man and, at the time of his hiring, was under 40 years old.  McCann would perform at least some of the duties that Plaintiff once performed, including verifications of hired employees' personal information.

### B.  Work Performance Reviews

During the course of his employment, Plaintiff received multiple reviews describing shortcomings in his work performance.  In December 2018, Christina Klemp, his supervisor at the time, reported to Banks that Plaintiff was not distributing received packages appropriately, was opening the reception doors "earlier than told to," and was taking "[e]xcessive breaks." Klemp reported she had "concerns about his performance" and stated that Plaintiff "doesn't want to do what is required for this role."  In June 2019, Klemp sent a similar email to Banks reporting

Plaintiff was taking "excessive breaks" and that he was behind in entering CRM records and verifications.  In his 2019 performance review, covering the period from January to May 2019, Plaintiff received an overall score of "2—Below Expectations."

Plaintiff later moved under the supervision of Felicia Cream.  In December 2019, Cream emailed Plaintiff with concerns about specific issues with the verification process.  In April 2020, Cream sent another email, attaching a performance warning outlining concerns with verifications, among other issues, and stating that "[i]mmediate improvement is required on the timeliness of all verifications" and that "[i]f there are no marked improvements in all areas within 45 days, further disciplinary action will occur, including up to termination."  In his 2020 performance review, Cream gave Plaintiff an overall score of "2—Below Expectations."  This was followed up with another performance warning letter in June 2020, which similarly concluded that, if there were no "marked improvements in all areas within 45 days, further disciplinary action will occur, including up to termination."

### C.  Hostile Work Environment

Plaintiff claims he was subject to a hostile work environment based on comments made to him by three of his fellow employees: Gabe Klemp, Christina Klemp, and Tiffany Banks. Plaintiff stated in his deposition that no other employees made harassing or discriminatory comments.

### i.  Gabe Klemp

Plaintiff testified at deposition that Gabe Klemp, the employee originally tasked with training Plaintiff once he began his employment in the U.S., said to him, as Plaintiff was stapling a document, "in this country, we staple the paper in the left [sic]" and made similar comments along the lines of "in this country, we do that this way."  Plaintiff testified Gabe Klemp also

made comments in respect to his accent such as "I cannot hear you, I cannot understand you, what is he saying," which "really offended" Plaintiff, in addition to comments regarding Plaintiff's accent, smell, and food that Plaintiff found offensive.  Plaintiff stated in his deposition that there was a meeting with Christina Klemp and Felicia Cream regarding such comments by Gabe Klemp, but that the comments stopped when Gabe Klemp was moved to another department in 2019.

### ii.    *Christina Klemp*

Plaintiff also testified at deposition that Christina Klemp made fun of his accent and made comments when he was not feeling well that he "should have stayed home" in a manner he found offensive.  Such comments were made during the time when Christina Klemp was his supervisor, and Plaintiff acknowledges the comments ended at least by the time she went on medical leave in June 2021.

### iii.    *Tiffany Banks*

Plaintiff additionally testified at his deposition that Banks made offensive comments to him about his accent, her inability to understand him, his feeling unwell, and something to the effect of he "has a lots of issues."  Plaintiff stated in his deposition that Banks also asked him around Ramadan if he was "going to be like not eating and not drinking" and said to him "I don't want to hear I am hungry, I am thirsty, I am dizzy, I want to go home."  Plaintiff could not provide specific times and dates such comments were made.  Plaintiff also testified he felt offended by the way Banks handled giving him a pin commemorating his ten-year service anniversary with Defendant when she said "go to the office and take one" in response to Plaintiff's request for a pin.

#### iv.    Miscellaneous

Plaintiff also testified at deposition he felt excluded during some work functions, including at a 2019 holiday party where he felt excluded from the "HR table" by his fellow employees.  Plaintiff testified he generally felt excluded by or isolated from other employees during his employment.

## II.    LEGAL STANDARDS

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion."  *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52).  "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact."  *Id.* (citation omitted).  A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden

of proof." *Celotex*, 477 U.S. at 323.

## III.   DISCUSSION

### A.  Time Bar to Plaintiff's Claims (Title VII, ADA, ADEA, and PHRA)

As a preliminary matter, Defendant argues that, to the extent Plaintiff basis his claims on discrete acts of discrimination or harassment under Title VII, the ADA, the ADEA, and the PHRA that fall outside of the relevant statute of limitations period preceding Plaintiff's filing of a charge of discrimination, those claims are time-barred.  Plaintiff responds that he bases his discrimination claims on the discrete act of his termination on October 1, 2021 and seeks to use prior conduct (*i.e.*, conduct falling outside of the relevant statutory time period) as background evidence to support his claims.  Plaintiff also uses prior conduct as a basis for his hostile work environment claims.

The parties do not dispute that Plaintiff was terminated on October 1, 2021 and filed a charge of discrimination both with the Equal Employment Opportunity Commission ("EEOC") and Pennsylvania Human Relations Commission ("PHRC") on October 28, 2021.

There are two distinct types of claims implicated by Defendant's time bar argument: those premised on "discrete acts, which are individually actionable, and [those premised on] acts which are not individually actionable but may be aggregated to make out a hostile work environment claim." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).  Each is addressed in turn.

### i.   Discrete Act

Claims premised on discrete acts "must be raised within the applicable limitations period or they will not support a lawsuit." *Id.* (citing *Morgan*, 536 U.S. at 113).  Termination

constitutes a discrete act.  *See Morgan*, 536 U.S. at 114.[2]

The applicable time limitations are as follows.  Before bringing a lawsuit under Title VII, the ADEA, or the ADA, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *Ingram v. Vanguard Grp., Inc.*, 2015 WL 4394274, at *9 (E.D. Pa. July 17, 2015) (in respect to Title VII and the ADEA) (citing 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)); *Gloeckl v. Giant Eagle, Inc.*, 176 F. App'x 324, 326 (3d Cir. 2006) (in respect to the ADA).[3]  Before bringing claims pursuant to the PHRA, a plaintiff must file a charge of discrimination with the PHRC within 180 days.  *Ingram*, 2015 WL 4394274, at *9 (citing 43 Pa. Stat. Ann. § 959(h)).

Here, there is no dispute that Plaintiff filed a charge of discrimination on October 28, 2021 and that his termination, the discrete event on which he predicates his claims, was on October 1, 2021.  The termination is clearly within the 300-day limit applicable to Plaintiff's federal statutory claims as well as the 180-day limit applicable to his PHRA claims.  Therefore, to the extent Plaintiff's claims are premised on the discrete act of his termination in October 2021, they are not time-barred.  This is the only discrete act on which Plaintiff predicates his

---

[2] *Morgan*'s treatment of discrete discriminatory acts applies across the statutory regimes at issue.  *O'Connor*, 440 F.3d at 128 ("We find persuasive the reasoning of our sister circuits that the distinction between 'continuing violations' and 'discrete acts' is not an artifact of Title VII, but is rather a generic feature of federal employment law.  Thus, in whatever statutory context the distinction may arise, *Morgan* will control."); *see also Emmell v. Phoenixville Hosp. Co., LLC*, 303 F. Supp.3d 314, 325 (E.D. Pa. 2018) (applying *Morgan*'s treatment of discrete acts to PHRA claim).

[3] The 300-day limit applies given that Pennsylvania is a "deferral state":

> For a charge to be timely, an employee normally must file it with the EEOC within 180 days of the alleged unlawful employment practice.  42 U.S.C. § 2000e–5(e)(1).  However, in a deferral state such as Pennsylvania (that is, a state that has a state or local law prohibiting the practice alleged and has established or authorized the state or local authority to grant or seek relief from practices prohibited under the ADA), the employee has not 180 but 300 days from the date of the alleged unlawful employment practice in which to file her charge of discrimination.

*Gloeckl*, 176 F. App'x at 325-26.

claims: as Plaintiff expressly states, he is "seeking relief in this action based on his termination on October 1, 2021 . . . ."

### ii.  *Hostile Work Environment*

Additionally, Plaintiff may predicate his hostile work environment claims pursuant to Title VII, the ADA, and the PHRA on conduct falling outside of the relevant statutory time period—*i.e.*, "acts which are not individually actionable but may be aggregated to make out a hostile work environment claim." *O'Connor*, 440 F.3d at 127. "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. In light of that difference, acts underlying hostile work environment claims "can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period." *O'Connor*, 440 F.3d at 127. Specifically, only one act contributing to a hostile work environment claim need fall within the statute of limitations period. *Bumbarger v. New Enter. Stone & Lime Co.*, 170 F. Supp.3d 801, 825 (W.D. Pa. 2016) (citing *Morgan*, 536 U.S. at 117-18).

Here, Plaintiff's termination suffices as the one act falling within the statute of limitations period, as determined *supra*. Accordingly, Plaintiff's hostile work environment claims are not time-barred because they are predicated in part on his termination in addition to prior conduct. *See, e.g.*, *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 166-67 (3d Cir. 2013) (remanding case for further proceedings where plaintiff alleged that at least one act underlying a hostile work environment claim fell within the statute of limitations).

### B.  *McDonnell Douglas* Burden-Shifting Framework

To address another preliminary matter, because Plaintiff relies on circumstantial evidence, rather than direct evidence, of discriminatory animus to support his claims, the burden-

shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),

applies to each of his disparate treatment and retaliation claims. *See Willis v. UPMC Children's*

*Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015); *Frost v. City of Philadelphia*, 839 F.

App'x 752, 758 (3d Cir. 2021).

Not all of Plaintiff's claims, however, are subject to the *McDonnell Douglas* framework.

Specifically, the framework does not apply to hostile work environment claims. *See Moody v.*

*Atl. City Bd. of Educ.*, 870 F.3d 206, 213 n.11 (3d Cir. 2017); *Jarmon v. Trader Joe's Co.*, 2023

WL 2402874, at *5 (E.D. Pa. Mar. 8, 2023). Nor does it apply to FMLA interference claims.

*Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017). Moreover, district courts in

this jurisdiction have generally declined to apply the *McDonnell Douglas* framework to failure to

accommodate claims. *See, e.g.*, *Schomer v. Westmoreland Cnty.*, 2022 WL 17905267, at *12

(W.D. Pa. Nov. 17, 2022), *report and recommendation adopted*, 2022 WL 17904252 (W.D. Pa.

Dec. 23, 2022) (listing cases).

The Third Circuit appears not to have directly addressed the issue of whether and to what

extent failure to accommodate claims are subject to the *McDonnell Douglas* framework but has

affirmed a district court decision concluding that failure to accommodate claims under the ADA

were not subject to the framework. *See Walton v. Mental Health Ass'n of Se. Pa.*, 1997 WL

717053, at *10 (E.D. Pa. Nov. 17, 1997), *aff'd sub nom. Walton v. Mental Health Ass'n. of Se.*

*Pa.*, 168 F.3d 661 (3d Cir. 1999); *see also Punt v. Kelly Servs.*, 862 F.3d 1040, 1049 (10th Cir.

2017) (stating *McDonnell Douglas* framework is "inapposite in a failure-to-accommodate case");

*Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021), *cert. denied*, 142 S. Ct.

767 (2022) (similar); *Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997) (similar).

For those claims that are subject to the *McDonnell Douglas* burden-shifting framework,

the first step dictates that Plaintiff bears the burden of making out a *prima facie* case of discrimination. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). "To establish a *prima facie* case at summary judgment, 'the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] *prima facie* case.'" *Id.* (quoting *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001) (emphasis added)). If Plaintiff fails to raise a genuine dispute of material fact as to any element of his *prima facie* case, summary judgment in favor of Defendant is warranted. *See Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580 (3d Cir. 1996).

Once Plaintiff makes out his *prima facie* case, the burden of production shifts to Defendant to offer a "legitimate non-discriminatory [justification] for the adverse employment action." *Burton*, 707 F.3d at 426 (citing *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009)). If Defendant does so, the third step in the framework shifts the burden of production back to Plaintiff to "provide evidence from which a factfinder could reasonably infer that [Defendant's] proffered justification is merely a pretext for discrimination." *Id.* (citing *Fuentes v. Perskie*, 32 F.3d 759, 764-65 (3d Cir. 1994)).

To make a showing of pretext, Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [Defendant's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Id.* at 427 (quoting *Fuentes*, 32 F.3d at 764).

Accordingly, it is necessary first to examine whether the evidence supports Plaintiff's *prima facie* case for each of his claims.

## C.  Disability Discrimination (ADA and PHRA)

To state a claim for discrimination on the basis of disability under the ADA and PHRA,[4] Plaintiff must demonstrate: "(1) [he] is a disabled person within the meaning of the ADA; (2) [he] is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by [Defendant]; and (3) [he] has suffered an otherwise adverse employment decision as a result of discrimination." *Eshleman v. Patrick Indus., Inc.*, 961 F.3d 242, 245 (3d Cir. 2020) (citation omitted).  Under the ADA, Plaintiff is disabled if he (1) has a "physical or mental impairment that substantially limits one or more" of his "major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." *Id.* (citing 42 U.S.C. § 12102(1)).  As to the final definition—the "regarded as" prong—"[s]ince its amendment in 2008, the ADA has further explained that an individual is 'regarded as' disabled when 'the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.'" *Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 48 (3d Cir. 2017) (quoting 42 U.S.C. § 12102(3)(A)).  Defendant challenges Plaintiff's ADA disparate treatment claim on the grounds he is not disabled under the ADA.

Plaintiff points to evidence creating a genuine dispute as to whether he is disabled under the ADA under the "regarded as" definition of disability.  It is not disputed that Plaintiff had a heart attack in December 2018 and has coronary heart disease resulting from blocked arteries.

---

[4] *See Oden v. SEPTA*, 671 F. App'x 859, 862 n.4 (3d Cir. 2016) (stating the "same liability standards" are applied to ADA and PHRA claims because the two statutes are "interpreted consistently" (citation omitted)).

Plaintiff does not allege any distinct facts pursuant to his PHRA claim, for which reason the conclusions concerning his ADA disability claim are equally applicable to his PHRA claim.

Nor is it disputed that Plaintiff was advised of his need to have heart surgery in light of his condition following his heart attack.  With these undisputed facts in mind, Plaintiff points to evidence that supports that his supervisors were aware of his condition and his need for surgery at the time of his termination.  For instance, Felicia Cream testified that she was aware of his need for surgery and that in "2020 or 2019" "there was a discussion [with Tiffany Banks] that he said that—that he was advised to have surgery."  Additionally, Banks testified that the fact Plaintiff might need surgery "was well known in [the] HR group because we are a team, we work together."  Banks was also aware that he might schedule his surgery when his wife came to the United States, stating "I know he mentioned in February of 2019 that he might wait until his wife gets here, but we had no further discussions about it."

Viewing such evidence in the light most favorable to Plaintiff, a reasonable juror could conclude that he was "regarded as" disabled by Defendant because his supervisors were aware of his heart condition and need for surgery at the time of his termination, which creates a reasonable inference his termination was "because of an actual or perceived physical or mental impairment." 42 U.S.C. § 12102(3)(A).  Defendant does not challenge the remaining elements of Plaintiff's ADA claim.  Accordingly, Plaintiff's disparate treatment claims pursuant to the ADA and PHRA shall not be dismissed on this theory.

### i.  ADA and PHRA Failure to Accommodate

Plaintiff also premises his ADA and PHRA[5] disability discrimination claims on Defendant's alleged failure to make reasonable accommodations for him in light of his heart condition.  As stated *supra*, failure to accommodate claims are not evaluated under the

---

[5] As in other respects, the ADA and PHRA are treated coextensively in the context of failure to accommodate claims.  *See, e.g.*, *Watson v. Drexel Univ.*, 2021 WL 4429826, at *4 & n.7 (3d Cir. Sept. 27, 2021).

*McDonnell Douglas* framework.  *See, e.g.*, *Schomer*, 2022 WL 17905267, at *12 (listing cases).

In support of his failure to accommodate claims, Plaintiff relies primarily on (1) his own deposition testimony stating that, at unspecified instances in the past, he requested "for some understanding" for scheduling doctor appointments and breaks between lifting heavy mail packages; and (2) Defendant's (*i.e.*, his supervisors') awareness that he had a heart condition, would require surgery, and was planning to schedule the surgery sometime after his wife's arrival in the United States.  Plaintiff argues on the basis of such evidence that "[a] jury could reasonably conclude that Defendant failed to accommodate [Plaintiff] by 1.) making it difficult for him to use time for scheduled doctor appointments and 2) terminating him in close proximity to the time he anticipated scheduling his heart surgery."

The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business."  42 U.S.C. § 12112(b)(5)(A). In other words, discrimination under the ADA "encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities."  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).

Under the ADA, an employer has a "duty to engage, in good faith, in an 'interactive process' with the employee" as part of the accommodation process.  *Reifer v. Colonial Intermediate Unit 20*, 462 F. Supp.2d 621, 634 (M.D. Pa. 2006) (quoting *Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 771 (3d Cir. 2004)).  To show Defendant failed to undertake the interactive process in good faith, Plaintiff must show:

> 1) [Defendant] knew about [his] disability; 2) [he] requested accommodations or assistance for [his] disability; 3) [Defendant] did not make a good faith effort to assist [him] in seeking accommodations; and 4) [he] could have been reasonably accommodated but for [Defendant's] lack of good faith.

*Taylor*, 184 F.3d at 319-20.

In respect to his own deposition testimony that, at unspecified points following his heart attack, he informally asked "for some understanding" for scheduling doctors' appointments and breaks, there is no indication Defendant did not make a good faith effort to accommodate him— indeed, Plaintiff does not point to evidence supporting that was denied any of the accommodations he sought (*i.e.*, the ability to attend his doctor appointments or take breaks during the work day). The only evidence Plaintiff points to in support of the contention he was denied accommodations in respect to doctor appointments is a single instance where Felicia Cream "attempt[ed] to write [him] up for a no show/no call while [he] was in the emergency room." This does not demonstrate Defendant did not act in good faith to accommodate Plaintiff's request for accommodation to attend doctor appointments: there is no indication that Defendant discouraged Plaintiff from going to the emergency room (if Plaintiff even made such a request), and Cream did not ultimately "write him up" for being out of work while he was in the emergency room (nor is it even clear from Plaintiff's testimony whether the emergency room visit was related to his heart condition). In respect to breaks, it is not disputed that Defendant was granted three breaks per day, which he used, by his own testimony, to smoke cigarettes.

In respect to Defendant's awareness of his heart condition and need for surgery, there is no indication that Plaintiff ever asked Defendant for an accommodation in the form of time off for his heart surgery. In fact, Plaintiff never rescheduled the surgery following his decision not to undertake it in 2019 and did not ask Defendant for any time off in anticipation of the surgery before his termination. While a "leave of absence for medical treatment may constitute a

reasonable accommodation under the ADA," *Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F. Supp.2d 694, 700 (E.D. Pa. 2010) (citation omitted), there is "nothing in the ADA [that] mandate[s] an employer to speculate as to the extent of [an employee's] disability or [his] need or desire for an accommodation simply because it is aware that [he] was ill." *Conneen v. MBNA America Bank, N.A.*, 182 F. Supp.2d 370, 377 (D. Del. 2002) (citation omitted). Moreover, while a request for accommodation does not have to be formal, in writing, or include the magic words "reasonable accommodation," "the notice nonetheless must make clear that the employee wants assistance for his or her disability. In other words, the employer must know of both the disability and the employee's desire for accommodations for that disability." *Taylor*, 184 F.3d at 313. Plaintiff did not make a request for time off for his surgery after he decided not to undertake it in 2019. Defendant could not have engaged in the interactive process with Plaintiff in the absence of any request for an accommodation.

For the reasons set forth above, summary judgment in favor of Defendant will be granted on Plaintiff's failure to accommodate theory under the ADA and PHRA.

### D. Age Discrimination (ADEA and PHRA)

In order to establish a *prima facie* case of age discrimination under the ADEA and PHRA,[6] Plaintiff must show he was (1) at least 40 years old; (2) subject to an adverse employment action; (3) qualified for his position; and (4) the adverse employment action was because of his age. *See Fowler v. AT&T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021); *Willis*, 808 F.3d at 644. The last element can be shown where "the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory

---

[6] The analysis for ADEA claims is also applied to age-based discrimination claims under the PHRA. *Willis*, 808 F.3d at 643.

motive." *Willis*, 808 F.3d at 644. Defendant challenges only the fourth element—that Plaintiff's termination was because of his age—specifically arguing that Plaintiff "cannot establish that he was replaced. . . ."

There is a genuine dispute as to whether Plaintiff was "replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Id.* Plaintiff points to evidence supporting that Gabriel McCann—who, it is not disputed, was under 40 years old at the time—was hired three or four months after Plaintiff's termination and assumed many of Plaintiff's important job responsibilities. Specifically, Felicia Cream testified that McCann's position was posted in November 2021 (with Plaintiff's termination occurring on October 1, 2021) and that, once hired, McCann's "primary duties" included verifications, which Cream affirmed were a "big part of [Plaintiff's] previous position." Cream further stated that McCann also had duties related to "[m]arketing copies and CRM entries," which, she acknowledged, were "the primary things that [Plaintiff] was supposed to be doing when he was in his role." Finally, while the parties do not dispute that McCann was under forty, it is not clear from the record what his precise age was at the time he was hired by Defendant.

In the light most favorable to Plaintiff, this evidence creates a genuine dispute as to whether Plaintiff was replaced by McCann and whether McCann was "sufficiently younger" to support the inference of a discriminatory motive. *Id.*

### E.  Race and National Origin Discrimination (Title VII, Section 1981, and PHRA)

Plaintiff brings race and national origin disparate treatment claims pursuant to Title VII (race and national origin), Section 1981 (race), and the PHRA (race and national origin). *See Butler v. Arctic Glacier USA*, 213 F. Supp.3d 711, 716 (E.D. Pa. 2016) (race discrimination claims under Title VII, Section 1981, and the PHRA involve the "same legal analysis") (citing

18

cases); *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999).

To establish a *prima facie* case of race or national origin discrimination, Plaintiff most show that "(1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought to attain or retain; (3) [he] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *Jones*, 198 F.3d at 410.  Defendant challenges only the fourth prong.

Plaintiff responds that the fourth prong is satisfied because Plaintiff was replaced by someone outside of his protected class—Gabriel McCann.  Evidence that an employee was replaced by someone outside of their protected class can be used to establish an inference of discrimination.  *See Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007) (listing cases); *Edwards v. Albert Einstein Med. Ctr.*, 533 F. Supp.3d 215, 222 (E.D. Pa. 2021) (concluding employee made *prima facie* case of race and national origin discrimination where she demonstrated the employee who replaced her was outside of her protected class).

Here, it is not disputed that McCann, the employee who was hired three or four months after Plaintiff's termination, is white/Caucasian.  Since there is a genuine dispute as to whether McCann replaced Plaintiff, as discussed *supra* in relation to Plaintiff's age discrimination claims, there is also genuine dispute of fact that if resolved in Plaintiff's favor would establish a *prima facie* case in respect to his race and national origin disparate treatment claims pursuant to Title VII, Section 1981, and the PHRA.

### F.  Retaliation (ADA, Title VII, FMLA, Section 1981, and PHRA)

Plaintiff brings retaliation claims pursuant to Title VII, Section 1981, the ADA, the

FMLA, and the PHRA.[7]  To establish a *prima facie* case for retaliation, the elements under the

each statutory regime are "essentially the same": Plaintiff "must show that (1) he engaged in a

protected activity (such as taking FMLA qualifying leave, requesting a reasonable

accommodation under the ADA, or making a complaint regarding an activity prohibited by Title

VII), (2) he suffered an adverse employment decision, and (3) there was a causal connection

between the protected activity and the adverse employment decision."  *Garcia v. Vertical Screen*,

592 F. Supp.3d 409, 422 (E.D. Pa. 2022); *see Jones*, 198 F.3d at 415; *Doe v. Triangle

Doughnuts, LLC*, 472 F. Supp.3d 115, 138-40 (E.D. Pa. 2020).

Defendant argues that Plaintiff has failed to meet the first and third elements of his

retaliation claims—*i.e.*, that Plaintiff has failed to show that he engaged in any protected activity

or that there was a causal connection between any protected activity and his termination.

a.  <u>ADA</u>

Plaintiff predicates his ADA retaliation claims on two activities that, in his view,

constitute protected activity: his making Defendant (*i.e.* his supervisors) aware he would need

heart surgery and planned to have heart surgery when his wife came to the U.S. as well as his

"informally [seeking] medical accommodations from management at various times throughout

his employment."  As to the latter, Plaintiff specifically points to his own deposition testimony as

follows:

> I only request[ed] for some understanding that when I have doctor appointments,
> when I have procedures and when I'm not feeling well, when I cannot lift heavy

---

[7] Retaliation claims are cognizable under each of the statutes.  *See, e.g.*, *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022) (stating retaliation claims are cognizable under Title VII, Section 1981, the ADA, and the FMLA); *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (describing the anti-retaliation provisions of the PHRA).  PHRA retaliation claims are evaluated under the same standards as Plaintiff's other retaliation claims, so the conclusions below apply with equal respect to Plaintiff's PHRA claims.  *See Pedro v. City Fitness, LLC*, 803 F. App'x 647, 651 (3d Cir. 2020) (with respect to Title VII and Section 1981); *Scarborough v. Cent. Bucks Sch. Dist.*, 632 F. App'x 80, 82 (3d Cir. 2015) (with respect to the ADA); *Garcia v. Vertical Screen*, 592 F. Supp.3d 409, 422 (E.D. Pa. 2022) (citations omitted) (with respect to the ADA, FMLA, and Title VII).

things . . . when I ask for, you know, a break, I just want to catch my breath, when I was still assigned to FedEx duties while it is requiring lifting and weighing heavy packages, just things like that.

In respect to making Defendant aware he needed heart surgery, while a "request for reasonable accommodations need not be formal," it "must make the employer aware that the employee wants help for her disability." *Hall v. Easton Area Sch. Dist.*, 2014 WL 1797415, at *4 (E.D. Pa. May 6, 2014) (citing *Taylor*, 184 F.3d at 313). Plaintiff did not reschedule his heart surgery after deciding not to do it in 2019 or ask for leave for his heart surgery before his termination. There was simply *no* request—formal or informal—for accommodation for the potential surgery. Accordingly, Plaintiff has not demonstrated he engaged in protected activity in respect to seeking accommodation for his heart surgery.

In respect to prior instances when he sought medical accommodations related to his heart condition (*i.e.*, when he requested "for some understanding"), Plaintiff has not established a causal connection between any such requests and his termination.

A causal connection can be supported by temporal proximity, which "may create an inference of causation if the timing is unusually suggestive." *Abdul-Latif v. Cnty. of Lancaster*, 990 F. Supp.2d 517, 530 (E.D. Pa. 2014) (citing *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)). Plaintiff can also establish causation by demonstrating "a pattern of antagonism after the protected act" or by showing "the record taken as a whole supports an inference of retaliation." *Id.* at 530 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)). Moreover, causation can be supported by "inconsistent reasons for terminating the employee" and "other types of circumstantial evidence that support the inference" of retaliation. *Farrell*, 206 F.3d at 281.

Plaintiff did not testify at deposition as to when these informal requests "for some

understanding" were made and does not otherwise provide evidence supporting an inference of retaliation based on temporal proximity alone—*i.e.*, that the timing was "unusually suggestive." *Abdul-Latif*, 990 F. Supp.2d at 530.  Nor has Plaintiff demonstrated a "pattern of antagonism" or a record supporting "retaliatory animus" in respect to such requests.  *Farrell*, 206 F.3d at 278. When viewed in the light most favorable to Plaintiff, the evidence does not support a causal link between his termination and any requests he made for accommodation related to his heart condition.

Accordingly, summary judgment is warranted in favor of Defendant in respect to Plaintiff's ADA retaliation claim.

b.  FMLA

In respect to his FMLA retaliation claim, Plaintiff must show specifically that "(1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights."  *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014) (internal brackets removed) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012)).  Plaintiff has not provided evidence supporting that he invoked his right to FMLA-qualifying leave in connection with his contemplated heart surgery or any other request related to his heart condition, and, accordingly, summary judgment is warranted in favor of Defendant on Plaintiff's FMLA retaliation claim.

c.  Title VII and Section 1981

Plaintiff further claims that his termination was done in retaliation for concerns he raised regarding discriminatory treatment based on his race and/or national origin in respect to comments made by Gabe and Christina Klemp, as outlined at length *supra*.

As with his other retaliation claims, Plaintiff "must introduce evidence about the 'scope and nature of conduct and circumstances that could support the inference' of a causal connection

22

between the protected activity and adverse action." *Young v. City of Philadelphia Police Dep't*, 651 F. App'x 90, 95-96 (3d Cir. 2016) (quoting *Farrell*, 206 F.3d at 279).  But Plaintiff fails to support a causal link between any informal complaints that he made in connection with the allegedly discriminatory comments by the Klemps—which, as Plaintiff states in his summary judgment briefing, occurred in "2019 and/or 2020"—and his termination in October 2021. Plaintiff does not provide evidence supporting temporal proximity that is suggestive of retaliatory animus.  Nor does he otherwise point to evidence supporting causation apart from temporal proximity.  Accordingly, summary judgment in favor of Defendant is warranted in respect to Plaintiff's Title VII and Section 1981 retaliation claims.

Because Plaintiff fails to support his retaliation claims pursuant to the ADA, FMLA, Title VII, and Section 1981, summary judgment is also warranted in favor of Defendant in respect to his PHRA claim since it is predicated on the same retaliation theories and underlying facts.

### G.  Hostile Work Environment (ADA, Title VII, and PHRA)

Plaintiff also brings hostile work environment claims pursuant to Title VII, the ADA,[8] and the PHRA.[9]  Plaintiff's hostile work environment claims are not treated under the *McDonnell Douglas* framework.  *See Moody*, 870 F.3d at 213 n.11; *Jarmon v. Trader Joe's Co.*, 2023 WL 2402874, at *5.  Nonetheless, for the reasons below, Plaintiff has not supported a key element of his hostile work environment claims at summary judgment.

---

[8] "The Third Circuit has assumed without specifically deciding that claims may be brought pursuant to the ADA for a hostile work environment under substantially the same framework as a Title VII hostile work environment claim." *Magerr v. City of Philadelphia*, 2016 WL 1404156, at *10 (E.D. Pa. Apr. 11, 2016); *see Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 666-67 & n.2 (3d Cir. 1999).

[9] Hostile work environment claims pursuant to the PHRA are subject to the same analysis as hostile work environment claims pursuant to the ADA and Title VII.  *See, e.g.*, *Hatch v. Franklin Cnty.*, 755 F. App'x 194, 201 (3d Cir. 2018) (in respect to the ADA); *Larochelle v. Wilmac Corp.*, 769 F. App'x 57, 61 (3d Cir. 2019) (in respect to Title VII).

a. <u>ADA</u>

To establish a hostile work environment under the ADA, Plaintiff must demonstrate the following:

> (1) [he] is a qualified individual with a disability under the ADA; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; (4) the harassment was sufficiently severe or pervasive to alter the conditions of [his] employment and to create an abusive working environment; and (5) [Defendant] knew or should have known of the harassment and failed to take prompt effective remedial action.

*Sampson v. Methacton Sch. Dist.*, 88 F. Supp.3d 422, 445 (E.D. Pa. 2015) (quoting *Hamera v. Cnty. of Berks*, 248 F. App'x 422, 425 (3d Cir. 2007)).   "In examining alleged 'severe or pervasive' discrimination in a workplace, the court must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Triangle Doughnuts*, 472 F. Supp.3d at 132 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (internal quotations and brackets omitted)). Additionally, Plaintiff must demonstrate an "objectively hostile work environment."  *See Walton v. Mental Health Ass'n. of Se. Pennsylvania*, 168 F.3d 661, 666-67 (3d Cir. 1999).

Plaintiff has not demonstrated he endured severe or pervasive harassment in respect to any discriminatory conduct based on his heart condition—the only disability he claims.  Plaintiff points only to a very slim body of evidence in the summary judgment record to support he faced harassment based on his heart condition.  For instance, Plaintiff points to his own deposition testimony that Banks "made comments . . . about me being sick.  And if I called out sick, you know, she was like, oh, he has lots of issues.  You have lots of issues, aren't you [sic], and things like that."  At the same time, Plaintiff acknowledged he could not recall any specific times or dates when such comments were made.  Plaintiff also points to his own deposition testimony that

Cream "attempt[ed] to write me up for a no show/no call while I was in the emergency room. And her statement was, you could have let your son or your daughter call us."  As stated *supra*, it is not clear from his testimony why he was in the emergency room, and Plaintiff acknowledged in his deposition that he was not ultimately "written up" for missing work while he was in the emergency room.  Additionally, while Plaintiff contends there were instances following his heart attack where he was "harangue[d]" by Christina Klemp, in support Plaintiff only points to emails between Klemp and Banks regarding his work performance that do not support that harassing remarks were made to Plaintiff on the basis of his heart condition.

This evidence does not demonstrate severe or pervasive harassment.  Plaintiff has not pointed to evidence supporting that any discriminatory conduct on the basis of his heart condition was severe, frequent, physically threatening or humiliating, or that it unreasonably interfered with his work performance.  *See Triangle Doughnuts*, 472 F. Supp.3d at 132; *cf. Hamera*, 248 F. App'x at 425 (affirming district court conclusion that nine comments made over a year or more were not sufficiently severe nor pervasive to rise to an "actionable level of harassment").  Indeed, Plaintiff expressly stated in his deposition testimony that the comments made by the Klemps and Banks that he found to be offensive or harassing "did not impact [his] ability to do [his] job."

Accordingly, summary judgment is warranted in favor of Defendant in respect to Plaintiff's ADA hostile work environment claim.

### b. <u>Title VII</u>

Similarly, Defendant argues that Plaintiff has not supported that he faced severe or pervasive harassment in violation of Title VII.  To succeed on a hostile work environment claim under Title VII, Plaintiff must demonstrate:

(1) he suffered intentional harassment based on his race [or national origin]; (2) the harassment was severe or pervasive; (3) the harassment detrimentally affected him; (4) the harassment would have detrimentally affected a reasonable person in similar circumstances; and (5) a basis for employer liability.

*Cooper v. Pennsylvania Hum. Rels. Comm'n*, 578 F. Supp.3d 649, 665 (M.D. Pa. 2022)

(citations omitted)); *see Hanzer v. Mentor Network*, 610 F. App'x 121, 126 (3d Cir. 2015).

As with his ADA hostile work environment claim, Plaintiff has failed to demonstrate that any harassing, discriminatory conduct based on his race and/or national origin was severe or pervasive.  At most, Plaintiff has identified a few harassing comments made by Gabe Klemp, Christina Klemp, and Tiffany Banks over the course of his three years of employment. Specifically, in the light most favorable to Plaintiff, the evidence supports that (1) the Klemps made some comments making fun of Plaintiff's accent and made negative comments about his food; (2) Gabe Klemp told him that "in this country, we staple the paper in the left" as Plaintiff was attempting to staple some papers, along with similar comments about the way things are done "in this country"; and (3) Banks made comments related to his accent and her inability to understand him.  Plaintiff concedes that no other employees made discriminatory comments.

While these comments are unfriendly and unprofessional as set forth in the record they do not rise to the level of severe or pervasive discrimination on the basis of Plaintiff's race or national origin.  *Cf. Lignore v. Hosp. Univ. of Pennsylvania,* 2006 WL 1804571, at *7 (E.D. Pa. June 28, 2006) (five allegedly discriminatory actions spanning a period of three years were insufficient to be considered "pervasive"); *Tourtellotte v. Eli Lilly & Co.*, 2013 WL 1628606, at *6 (E.D. Pa. Apr. 16, 2013), *aff'd*, 636 F. App'x 831 (3d Cir. 2016) ("While inexcusable and offensive, [fellow employee's] comments were neither physically threatening nor humiliating and fall far short of the level required to establish the kind of severe, gender- or race-based, harassment that is legally actionable."); *Doty v. Pike Cnty. Corr. Facility*, 2006 WL 2850632, at

26

*11 (M.D. Pa. Oct. 3, 2006) ("Isolated or sporadic comments . . . do not violate Title VII.").

Accordingly, summary judgment is warranted in favor of Defendant in respect to Plaintiff's Title

VII and PHRA hostile work environment claim.

### H.  FMLA Interference

In addition to his FMLA retaliation claim, Plaintiff brings a FMLA interference claim.

FMLA interference claims do not require application of the *McDonnell Douglas* burden-shifting

framework.  *See Capps*, 847 F.3d at 155.  Nevertheless, Plaintiff fails to support the necessary

elements of his FMLA interference claim.  To make a claim of interference under the FMLA,

Plaintiff must establish:

> (1) [he] was an eligible employee under the FMLA; (2) [Defendant] was an
> employer subject to the FMLA's requirements; (3) [he] was entitled to FMLA
> leave; (4) [he] gave notice to [Defendant] of [his] intention to take FMLA leave;
> and (5) [he] was denied benefits to which [he] was entitled under the FMLA.

*Ross*, 755 F.3d at 191-92 (quoting *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F. Supp.2d

405, 446 (W.D. Pa. 2008)).

Here, Plaintiff points to no support in the record that he gave notice to Defendant of his

intention to take FMLA leave in connection with his contemplated heart surgery or that he was

denied benefits to which he was entitled under the FMLA.  Plaintiff did not reschedule his heart

surgery after deciding not to undertake it in 2019.  He did not ask Defendant for any period of

leave.  Simply, Defendant could not deny him FMLA benefits when Plaintiff did not seek them

in the first place.  Summary judgment in favor of Defendant is therefore warranted in respect to

Plaintiff's FMLA interference claim.

### I.  *McDonnell Douglas* Legitimate, Non-Discriminatory Reason

As determined *supra*, Plaintiff has demonstrated genuine disputes of fact that would

make out *prima facie* cases in respect to his disability, age, and race/national origin disparate

treatment claims pursuant to the ADA, ADEA, Title VII, Section 1981, and the PHRA.  Under the *McDonnell Douglas* burden-shifting framework, after a plaintiff meets their burden to establish a *prima facie* case, "the burden shifts to the employer to provide a legitimate . . . reason for its conduct."  *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017). Defendant's burden to show a legitimate, non-discriminatory reason is "relatively light." *Fuentes*, 32 F.3d at 763.

Defendant's proffered non-discriminatory reason for Plaintiff's termination is the restructuring of the human resources department and resulting cost savings.  Defendant also explains that Plaintiff was not considered for another position in the department during the restructuring because of his history of negative performance reviews.

There is record evidence supporting Defendant's justification.  Banks's testimony and documents outlining the restructuring plan support that Plaintiff's termination was a contemplated part of restructuring the department.  It is not disputed that Banks began to consider restructuring the department in March/April 2021, before Plaintiff's termination in October.  Nor is it disputed that the restructuring plan would result in a cost savings of roughly $10,000, as reflected in the restructuring proposals Banks shared with her supervisor. Additionally, as recounted at length *supra*, there are multiple negative performance reviews supporting Defendant's explanation as to why Plaintiff was not considered for another position in the company as part of the restructuring.

Accordingly, Defendant has met the "relatively light" burden of providing a legitimate, non-discriminatory reason for Plaintiff's termination.  *See Fuentes*, 32 F.3d at 763.

### J.   *McDonnell Douglas* Pretext

Because Defendant has provided a legitimate, non-discriminatory reason for having

terminated Plaintiff, the burden shifts back to the Plaintiff to show pretext.  To do so, "[P]laintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [Defendant's] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action."  *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 347 (3d Cir. 2022) (quoting *Fuentes*, 32 F.3d at 764).  In other words, "[P]laintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons."  *Fuentes*, 32 F.3d at 765 (internal quotations and citation omitted).  In making such a showing, Plaintiff faces a "difficult burden."  *Id.*

Here, Plaintiff primarily argues that Defendant's restructuring plan was a "convenient way to get rid of disabled workers"—referring to Plaintiff as well as Christina Klemp, who was also terminated as part of the restructuring plan while she was taking medical leave.  Plaintiff and Christina Klemp were the only two employees let go during the restructuring.

In support of his theory, Plaintiff points to Cream and Banks's testimony supporting that they were aware of Plaintiff's heart condition and his need to schedule surgery.  Additionally, Plaintiff points to Banks's testimony that she was aware that Plaintiff planned to schedule the surgery after his wife's arrival in the United States.  Banks also testified she was made aware that Plaintiff's wife would be arriving in September 2021—the same month in which Plaintiff was notified of his termination, effective October 1, 2021.  Additionally, Plaintiff points to the fact that McCann was hired three or four months after Plaintiff's termination and took over many of his important job duties.  Finally, it is undisputed that there were discussions between Cream and

Banks about potentially terminating Plaintiff as early as 2020 before there was discussion of restructuring the department.

Viewing such evidence in the light most favorable to the Plaintiff, a reasonable juror could disbelieve that Plaintiff was terminated merely due to the restructuring plan and could instead conclude that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendant's] action." *Canada*, 49 F.4th at 347. Namely, a reasonable juror could conclude, as Plaintiff contends, that the restructuring plan was mere pretext for removing Plaintiff in light of his heart condition and anticipated surgery. Accordingly, summary judgment is not warranted under the *McDonnell Douglas* framework in respect to Plaintiff's disparate treatment claims pursuant to the ADA, ADEA, Title VII, Section 1981, and the PHRA.

An appropriate order follows.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____

**WENDY BEETLESTONE, J.**